UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

RICHWELL GROUP, INC. d/b/a       *
MAXFIELD SEAFOOD,                *
                                 *
          Plaintiff,             *
                                 *
     v.                          *     Civil Action No. 17-cv-11442-IT
                                 *
SENECA LOGISTICS GROUP, LLC,     *
                                 *
          Defendant.             *

MEMORANDUM & ORDER

February 20, 2018

TALWANI, D.J.

I.     Introduction

Richwell Group, Inc., d/b/a Maxfield Seafood, ("Maxfield") brings a federal claim under the Carmack Amendment, 49 U.S.C. § 14706, a common law negligence claim, and a common law breach of contract claim against Seneca Logistics Group, LLC ("Seneca"). Before the court is Seneca's Amended Motion to Dismiss for Failure to State a Claim [#41].[1] For the reasons that follow, Defendant's motion is DENIED IN PART and taken under advisement in part.

II.    Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In

---

[1] After filing its original Motion to Dismiss [#23], Seneca filed a Motion for Leave to File Corrected Motion to Dismiss and Corrected Memo, and to Withdraw Original Motion and Memo [#37]. The court allowed Seneca to withdraw its original motion to dismiss and file an amended motion to dismiss with a short supplemental memorandum addressing an additional argument. The court also permitted Maxfield to file a supplemental opposition. See Order [#39].

addition to the allegations in the complaint, the court will consider the documents attached to the complaint. See Stein v. Royal Bank of Canada, 239 F.3d 389, 392 (1st Cir. 2001). At this stage, a court is required to "draw all reasonable inferences in [the plaintiff's] favor." Evergreen Partnering Grp., Inc. v. Pactiv Corp., 720 F.3d 33, 36 (1st Cir. 2013).

III. Facts Alleged

The Amended Complaint ("Complaint") alleges the following facts. Maxfield is a seafood importer and distributer. Compl. ¶ 5 [#18]. Maxfield entered into a Contract with Seneca on October 30, 2015. This Contract is attached as Exhibit A to the Complaint. Id. ¶¶ 9-11; Compl. Ex. A [#18-1]. According to Maxfield, the Contract "appears to enumerate certain conditions governing Seneca's provision of at least some services to Maxfield." Id. ¶ 10.

Terms in the Contract include the following. The first line states that it "is the sole governing document with respect to the brokerage of freight hereunder." An "Authorization" clause provides that the Contract "is the complete agreement between the parties hereto and supersedes prior writings on specific lanes," and "[c]ontradictions between the terms and conditions of this Contract and those contained in any shipment paperwork shall default in favor of those contained in this Contract." A "Double Brokering" clause states that Seneca would "contract directly with a carrier (unless otherwise agreed to)." A "Consequential Damages" clause provides that Seneca "will not be liable under any circumstances for any special, incidental, extended or consequential damages, including, but not limited to loss or damage resulting from delay, non-delivery or damage to a shipment, loss of sales, income, interest, profits, attorney's fees and other costs." Finally, a "Cargo Liability" clause states that Seneca has contingent cargo insurance up to $100,000 and requires customers to declare the value of any load and provide "special notification on loads with a declared value of greater than $100,000."

It also states "[a]ll claims must be filed directly with the actual transporting carrier."

According to the Complaint, on or about December 14, 2016, Maxfield arranged for Seneca to pick up and transport a load of lobster. Id. ¶¶ 12, 15-16. Maxfield exchanged various documents and communications with Seneca as part of this arrangement. Id. ¶ 14. Some of the lobster was to be picked up from Preferred Freezer Services of Boston Harbor, LLC ("Preferred Freezer"), a cold-storage facility in Everett, Massachusetts. Id. ¶¶ 12, 19.

Unbeknownst to Maxfield, Seneca hired Ernesto Perez to transport the load of lobster. Id. ¶¶ 23-24. Perez purportedly worked as a driver for Rapid Logistics Services, Inc. ("Rapid"). Id. ¶ 26. Seneca obtained Perez's information through a public listing offering services. Id. ¶ 25. Seneca made no efforts to vet the background or credentials of either Perez or Rapid. Id. ¶ 27. On December 15, 2016, Perez drove a truck to Preferred Freezer. Id. ¶ 19. Seneca's Chief Executive Officer, Vincent Grandillo, verbally authorized Preferred Freezer to release the load of lobster to Perez. Id. ¶ 20. A non-negotiable bill of lading was executed listing Seneca as the carrier. Id. ¶ 17.[2] Preferred Freezer released the lobster to Perez. Id. ¶ 19.

Grandillo informed Maxfield on December 20 that the load of lobster had been stolen and that Grandillo was unable to contact the driver. Id. ¶ 21. The next day, Grandillo reported the theft to law enforcement. Id. ¶ 22. Maxfield alleges that it suffered direct losses of $318,000, in

---

[2] Exhibit B to the Complaint consists of non-negotiable bills of lading for three separate lobster transport orders. Id. ¶¶ 17-18; Am. Compl. Ex. B [#18-2]. Order 4297474, dated December 14, 2016, and Order 4297512, dated December 15, 2016, list Seneca as the carrier. Id. Order 4297068, dated December 8, 2016, lists "Own Instructions" as the carrier. Id. All of these documents contain what appears to be the signature of "E. Perez" on the "Rec'd By" line and a signature of another individual on the "Shipped By" line, followed by the date December 15. Id. The Complaint does not make clear whether all of the bills of lading in Exhibit B relate to the lost lobsters at issue in this case, or only some. Nor is this clear from the face of the documents. In any event, the Complaint sufficiently alleges that a non-negotiable bill of lading was executed and that this bill of lading listed Seneca as the carrier. See id. ¶ 17. At least some of the bills of lading attached to the Complaint support this factual allegation.

3

the form of the purchase price of the lobster and lost profits on sale of the lobster. Id. ¶ 28.

    IV.    Count I – Carmack Amendment Claim Against Seneca as a Carrier

Maxfield asserts its first claim against Seneca under the Carmack Amendment to the Interstate Commerce Act, 49 U.S.C. § 14706. The Amendment imposes liability on carriers "for the actual loss or injury to the property" caused by the carrier. Id. § 14706(a)(1). The term "carrier" includes a "motor carrier[,]" which is defined as "a person providing motor vehicle transportation for compensation." Id. §§ 13102(3), (14). The Carmack Amendment requires a "carrier providing transportation or service . . . [to] issue a receipt or bill of lading for property it receives for transportation." Id. § 14706(a)(1). It then makes carriers "liable to the person entitled to recover under the receipt or bill of lading" for property losses. Id. The Carmack Amendment imposes liability on carriers, see id., but not on brokers. See Chubb Grp. of Ins. Cos. v. H.A. Transp. Sys., Inc., 243 F. Supp. 2d 1064, 1068-69 (C.D. Cal. 2002) ("[T]he Carmack Amendment does not apply to brokers."); see also Commercial Union Ins. Co. v. Forward Air, Inc., 50 F. Supp. 2d 255, 257 (S.D.N.Y. 1999) ("The Carmack Amendment does not provide for the liability of brokers."). Seneca argues that the Carmack Amendment's liability provision does not apply here because under the Contract, Seneca acted as a broker rather than a carrier.

Looking only to the Complaint and the attached materials, it is not clear whether Seneca was acting as a broker or carrier for the specific transaction underlying Maxfield's claims. The Contract supersedes *prior* writings between Seneca and Maxfield. It further provides that it is the "sole governing document with respect to the brokerage of freight hereunder." Yet this does not preclude the parties from subsequently arranging for Seneca to act as the carrier of other freight, and Maxfield alleges that it arranged, through various other documents and communications, to have Seneca pick up and transport *this* load of lobster. Id. ¶ 14. As Maxfield highlights, the

4

Contract alone does not provide any terms with respect to specific shipments. Accordingly, the Contract does not definitively establish that Seneca acted as a broker in this instance.

Taking as true the facts alleged in the Complaint, Seneca agreed to act as the carrier, not the broker, of this load of lobster. Id. ¶ 16. According to the Complaint, Seneca held itself out to Maxfield as a carrier. As alleged, Seneca is in the business of providing transportation services and lists "trucker" in its business description on its insurance policy. Id. ¶ 8. Further, Maxfield alleges Seneca agreed to transport Maxfield's load of lobster. Id. ¶ 16. Taking these allegations as true, as the court must do at this stage, Seneca acted as a carrier. "Whether a company is a broker or a carrier is not determined by what the company labels itself, but by how it represents itself to the world and its relationship to the shipper." Hewlett-Packard Co. v. Brother's Trucking Enters., Inc., 373 F. Supp. 2d 1349, 1352 (S.D. Fla. 2005); see also Lumbermens Mut. Cas. Co. v. GES Exposition Servs., Inc., 303 F. Supp. 2d 920, 921-22 (N.D. Ill. 2003) (denying summary judgment as to whether defendant was broker or carrier when company labeled itself as broker yet undertook responsibility for ensuring shipment was transported to destination). "[W]hen analyzing whether an entity operated as a broker or a carrier, courts have looked to the understanding among the parties involved, which includes consideration of how the entity held itself out." ASARCO LLC v. England Logistics, Inc., 71 F. Supp. 3d 990, 998 (D. Ariz. 2014). Because Maxfield alleges that it hired Seneca to act as carrier and the Contract is not necessarily inconsistent with that allegation, the court denies Seneca's motion to dismiss this count.

V.   Maxfield's Common Law Claims

Although Maxfield claims Seneca was a carrier, and thus that the Carmack Amendment applies, it has also alleged two alternative theories of liability. Count II alleges Seneca promised to provide professional services to Maxfield and was negligent in selecting and retaining Perez

5

and/or Rapid to assist with the service Seneca promised to provide. Count III alleges Seneca breached its duties under the Contract, causing damages to Maxfield. Defendant argues both of these counts should be dismissed on preemption grounds, the negligence claim is barred by the express terms of the Contract and by the economic loss doctrine, and the contract claim is barred by the terms of the contract prohibiting recovery of the damages Maxfield seeks. At this time, the court takes Seneca's motion to dismiss Counts II and III under advisement.

VI. Conclusion

For the foregoing reasons, Seneca's Amended Motion to Dismiss for Failure to State a Claim [#41] is DENIED IN PART and taken under advisement in part. Specifically, the motion is DENIED as to Count I and taken under advisement as to Counts II and III. Seneca shall file its answer to Maxfield's Complaint by March 9, 2018. Seneca need not answer paragraphs 34 through 41 of the Complaint pending further order of the court.

IT IS SO ORDERED.

February 20, 2018 /s/ Indira Talwani
United States District Judge