UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RICHWELL GROUP, INC., d/b/a<br>MAXFIELD SEAFOOD,<br><br>    Plaintiff,<br><br>v.<br><br>SENECA LOGISTICS GROUP, LLC,<br><br>    Defendant. | *<br>*<br>*<br>*<br>*<br>*   Civil Action No. 17-cv-11442-IT<br>*<br>*<br>*<br>* |

MEMORANDUM & ORDER
August 14, 2019

TALWANI, D.J.

I.    Introduction

Richwell Group, Inc., d/b/a Maxfield Seafood ("Maxfield"), brings federal and state claims against Seneca Logistics Group, LLC ("Seneca"), for the loss of a truckload of lobster. Seneca counterclaims for failure to pay for other lobster shipments. Before the court are cross-motions for summary judgment on all claims and counterclaims.

As set forth further below, because Maxfield has established that Seneca acted as a motor carrier for the load of lobster at issue in Maxfield's complaint, Maxfield is entitled to relief under the Carmack Amendment, 49 U.S.C. § 14706(a)(1). Accordingly, as to Count I of the Amended Complaint [#18], Seneca's Motion for Summary Judgment [#79] is DENIED and Maxfield's Cross-Motion for Summary Judgment [#82] is ALLOWED as to liability. The amount of damages remains in dispute. Because the Carmack Amendment preempts state law claims, Seneca's Motion for Summary Judgment [#79] is ALLOWED as to Maxfield's common law claims, Counts 2 and 3 of the Amended Complaint [#18].

As also set forth further below, Seneca has established that Maxfield failed to pay two

invoices for other lobster shipments. Seneca's <u>Motion for Summary Judgment</u> [#79] is therefore ALLOWED on Seneca's breach of contract claim, Count 1 of the <u>Answer and Counterclaim</u> [#57]. Seneca has not offered evidence, however, sufficient to permit a jury to find that Maxfield entered these agreements intending not to pay, and therefore, as to Seneca's claims for breach of the implied covenant of good faith and fair dealing, fraud, and M.G.L. c. 93A, Counts 2 through 5 of the <u>Answer and Counterclaim</u> [#57], Seneca's motion is DENIED and Maxfield's <u>Cross-Motion for Summary Judgment</u> [#82] is ALLOWED.

II. <u>Summary Judgment Standard</u>

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Cross-motions for summary judgment do not alter the basic Rule 56 standard, but rather simply require us to determine whether either of the parties deserves judgment as a matter of law on facts that are not disputed." <u>Adria Int'l Grp., Inc. v. Ferre Dev., Inc.</u>, 241 F.3d 103, 107 (1st Cir. 2001). In deciding cross-motions for summary judgment, the court properly "resolve[s] all factual disputes and any competing, rational inferences in the light most favorable to the party against whom summary judgment has [been filed]." <u>Wightman v. Springfield Terminal Ry. Co.</u>, 100 F.3d 228, 230 (1st Cir. 1996). Barring special circumstances, the court "must consider each motion separately, drawing inferences against each movant in turn." <u>Tutor Perini Corp. v. Banc of Am. Sec. LLC</u>, 842 F.3d 71, 84 (1st Cir. 2016) (quoting <u>EEOC v. Steamship Clerks Union, Local 1066</u>, 48 F.3d 594, 603 n.8 (1st Cir. 1995)).

III. <u>Procedural History</u>

The court denied Seneca's <u>Amended Motion to Dismiss</u> [#41] as to Maxfield's claims pursuant to the Carmack Amendment and took the remaining arguments from Seneca's motion

2

under advisement. Mem. and Order [#48]. Following discovery, the parties filed the pending motions for summary judgment.

IV. Maxfield's Claims

A. *Factual Background*[1]

On October 30, 2015, Maxfield and Seneca executed an agreement for "brokerage of freight." Am. Compl., Account Application, Ex. A ("Contract") [#18-1]. The Contract states that it "is the sole governing document with respect to the brokerage of freight hereunder." Id. Between December 2015 and December 2016, Seneca handled twenty-seven loads of cargo for Maxfield at various locations in New England and California. Seneca Facts, Spreadsheet of Loads, Ex. E [#81-5]. On Monday, December 12, 2016, Diane Zhang, the import manager for Maxfield, emailed Seneca about moving loads of frozen seafood later that week from Preferred Freezer Services of Boston Harbor, LLC ("Preferred Freezer"), and Rich's Transportation. Maxfield Facts, Deposition of Vincent Grandillo[2] ("Grandillo 30(b)(6) Dep.") at 33:2-12 [#83-1]; see Affidavit of Elizabeth S. Zuckerman ("Zuckerman Aff."), Email Exchange Re: Pickup from Boston, Ex. C [#85-3]; Zuckerman Aff., Email Exchange Re: Cooked Bullets and Raw Split Bullets, Ex. B [#85-2].

On Thursday, December 15, 2016, an individual purporting to work for Rapid Logistics Services, Inc. ("Rapid"), contacted Seneca about transporting the frozen seafood from Preferred Freezer and Rich's Transportation. Grandillo 30(b)(6) Dep. at 35:15-24 [#83-1]. That same morning, Chris Carcione of Seneca sent an email to rapidlogisticsinc@gmail.com with a "carrier packet and rate confirmation for load 2151." Zuckerman Aff., Email Exchange Re: Carrier

---

[1] The following factual summary is undisputed. Some facts are reserved for later discussion.
[2] Grandillo, an owner and manager of Seneca, testified under Fed. R. Civ. P. 30(b)(6) on Seneca's behalf.

3

Packet and Rate Confirmation, Ex. F [#85-6]. The reply, purportedly from a dispatch manager at Rapid named Frank Whittaker, stated "[p]acket and [c]onfirmation" (presumably attaching the completed forms). Id. Six minutes later, Carcione sent the "dispatch form for load 2151" to the rapidlogisticsinc@gmail.com email address. Id.

Later that day, a man who identified himself as Ernesto Perez and claimed to work for Rapid arrived at Preferred Freezer to pick up the lobster stored there. Grandillo 30(b)(6) Dep. at 31:1-3, 82:2-12 [#83-1]. Preferred Freezer called Grandillo to confirm the identity of the pick-up driver, and Grandillo confirmed that Ernesto Perez was "the guy." Maxfield Facts ¶ 18 [#83]; Seneca Facts II ¶ 18 [#90]; Grandillo 30(b)(6) Dep. at 81:7-82:21 [#83-1]. The driver picked up the lobster from Preferred Freezer and signed the Bill of Lading. Grandillo 30(b)(6) Dep. at 31:1-10 [#83-1]; Am. Compl., Bill of Lading, Ex. B [#18-2].

Seneca had scheduled the second load of lobster to be picked up from Rich's Transportation later that day (and then rescheduled the pickup for the next morning), but no pickup occurred. See Zuckerman Aff., Email Exchange Re: Cooked Bullets and Raw Split Bullets, Ex. B at 2 [#85-2]; Zuckerman Aff., Email Exchange Re: pickup from Boston, Ex. C. at 2 [#85-3]. In an email on Monday, December 19, 2016 at 10:53 a.m., Grandillo wrote to Zhang:

> I tried calling but I could not get you on the phone. On Friday our truck informed me that these two pallets were picked up. I am just now finding out that they were not and our d[r]iver lied to us . . . I was given the wrong info from the driver and I did not confirm this with the shipper.

Zuckerman Aff., Email Exchange Re: Richs Pick, Ex. D at 2 [#85-4].

At some point, Seneca also learned that the lobster picked up from Preferred Freezer was missing. Seneca attempted to contact Rapid at the rapidlogisticsinc@gmail.com email address, but received an automated reply indicating the email account was deactivated. Grandillo 30(b)(6) Dep. at 60:13-20 [#83-1]. Later on

4

Monday, December 19, Grandillo advised Maxfield that the lobster picked up from Preferred Freezer was missing and that Seneca was unable to contact the driver. Grandillo 30(b)(6) Dep. at 60:21-61:1 [#83-1]; Zuckerman Aff., Email Exchange Re: Richs Pick, Ex. D at 2 [#85-4]; Am. Compl. ¶ 21 [#18]; Answer to Am. Compl. and Countercl. ¶ 21 [#57].

Seneca later learned that the carrier package containing a W-9, U.S. DOT Certificate, Certificate of Liability Insurance, and other documents the purported dispatcher had provided Seneca was fake. Zuckerman Aff., Fake Rapid Carrier Package, Ex. E [#85-5]; see Affidavit of Diane Zhang ("Zhang Aff.") ¶ 4 [#84]; Zhang Aff., Email Exchange Re: Richwell Group Claim, Ex. B at 4 [#84-2]. Later, Grandillo reviewed a copy of the driver's license provided for Perez and determined it was fake as well. Grandillo 30(b)(6) Dep. at 66:9-18 [#83-1].

B. *Analysis*

Maxfield argues that Seneca is liable as a motor carrier for the loss of the lobster under the Carmack Amendment. Maxfield Mot. for Summ. J. at 3-6 [#82]. Seneca argues that it is a broker, rather than a carrier, and therefore the Carmack Amendment does not apply. Seneca Mem. in Support of Mot. for Summ. J. at 1 [#80].

The Carmack Amendment to the Hepburn Act is a 1906 addition to the Interstate Commerce Act ("ICA"), 24 Stat. 379, which provides a cause of action for the loss or damage of goods in interstate commerce received for transportation by a "carrier." 49 U.S.C. §§ 14706(a)(1), (d); Rini v. United Van Lines, 104 F.3d 502, 504-06 (1st Cir. 1997). A carrier covered by the Carmack Amendment that receives property for transportation is "liable to the person entitled to recover under the receipt or bill of lading" for the actual loss or injury to the

property. 49 U.S.C. § 14706(a)(1); Fredette v. Allied Van Lines, 66 F.3d 369, 372 (1st Cir. 1995). Therefore, if Seneca is a motor carrier under the Carmack Amendment, it is liable for the lost lobster.

The ICA defines a motor carrier as "a person providing motor vehicle transportation for compensation." 49 U.S.C. § 13102(14). The ICA further defines "transportation" as:

> A. [A] motor vehicle . . . or equipment of any kind related to the movement of passengers or property, or both, regardless of ownership or an agreement concerning use; and
>
> B. [S]ervices related to that movement, including arranging for, receipt, delivery, elevation, transfer in transit, refrigeration, icing, ventilation, storage, handling, packing, unpacking, and interchange of passengers and property.

49 U.S.C. § 13102(23). A federal regulation elaborates on these definitions:

> [M]otor carriers . . . are not brokers . . . when they arrange or offer to arrange the transportation of shipments which they are authorized to transport and which they have accepted and legally bound themselves to transport.

49 C.F.R. § 371.2(a).

When analyzing whether an entity operated as a carrier, courts look to how the party acted during the "specific transaction" at issue, which includes "the understanding among the parties involved [and] consideration of how the entity held itself out." ASARCO LLC v. England Logistics Inc., 71 F. Supp. 3d 990, 998 (D. Ariz. 2014); Schramm v. Foster, 341 F. Supp. 2d 536, 550 (D. Md. 2004); see CGU Int'l Ins., PLC v. Keystone Lines Corp., No. C-02-3751 SC, 2004 WL 1047982, at *2 (N.D. Cal. May 5, 2004). Consistent with the statutory definition, other courts have found that a party is a carrier in a "specific transaction" if it takes responsibility for a shipment, whether or not it performed the actual transportation or labels itself as a broker. Tryg Ins. v. C.H. Robinson Worldwide, Inc., 767 F. App'x 284, 287 (3d Cir. 2019); Essex Ins. Co. v. Barrett Moving & Storage, Inc., 885 F.3d 1292, 1302 (11th Cir. 2018); ASARCO LLC, 71 F. Supp. 3d 990, 998; Lumbermens Mut. Cas. Co. v. GES Exposition Servs., 303 F. Supp. 2d 920,

921 (N.D. Ill. 2003).

Seneca argues that the Contract obliged it to provide "brokerage" services, that it has no trucks, drivers, or infrastructure that a traditional carrier would have, that it is registered with the Department of Transportation as a broker, and that it utilized third-party carriers for each of the previous Maxfield orders. However, "[w]hether a company is a broker or a carrier is not determined by what the company labels itself, but by [] its relationship to the shipper." Hewlett-Packard Co. v. Brother's Trucking Enterprises, Inc., 373 F. Supp. 2d 1349, 1352 (S.D. Fla. 2005). Further, the licenses that Seneca holds, its previous transactions with Maxfield, and its label in the Contract are not dispositive to its role during this specific transaction. See Ensco, Inc. v. Weicker Transfer and Storage Co., 689 F.2d 921, 925 (10th Cir. 1982); Delta Research Corp. v. EMS, Inc., No. 04-60046, 2005 WL 2090890, at *5 (E.D. Mich. Aug. 29, 2005) ("[a party] may be liable as a [] carrier if it acts as one, even if it is not licensed"). Seneca argues that the Contract said that Seneca would "contract directly with a carrier," but that promise does not mean that Seneca did so in this particular transaction.

The record shows that Seneca, and no other entity, arranged for all of the details relating to the pickup of the load of lobster. Grandillo arranged the route and order of the pickups and committed to the delivery minutes after the request was made, demonstrating that no separate entity was involved in the planning process. See Zhang Aff., Email Exchange Re: Richs Pick, Ex. A at 2 [#84-1]; Zuckerman Aff., Email Exchange Re: Cooked Bullets and Raw Split Bullets, Ex. B [#85-2]. When Zhang asked if Grandillo could "find a good rate" for the order, Grandillo answered two minutes later and said, "[w]e can do about the same as last time." Zuckerman Aff., Email Exchange Re: pickup from Boston, Ex. C at 4 [#85-3]. Grandillo's prompt responses are evidence that the "we" at issue was Seneca and not a third-party carrier. The next day, before

7

Zhang confirmed a shipment was going forward, Grandillo contacted Preferred Freezer about picking up the shipment and then reached out to Zhang about the shipment. Id. at 3. Later that same day, Grandillo emailed Zhang the truck's route, indicated "we" could do three pickups in one day, but expressed "I would prefer to start picking up Thursday." Id. at 2. Grandillo asked Cape Seafood to "pinwheel" the lobster onto the truck during discussions via email with Maxfield about the load. Zuckerman Aff., Email Exchange Re: Cooked Bullets and Raw Split Bullets, Ex. B at 7 [#85-2]. Whittaker, the purported dispatcher, had no role or control in any of these details, but instead took direction from Seneca regarding the load.

Seneca did not broker an agreement between a carrier and Maxfield. Instead Seneca engaged the driver and truck on the morning of the scheduled pickup. On the date of the delivery, Carcione sent a carrier packet, rate confirmation, and dispatch form to rapidlogisticsinc@gmail.com. Zuckerman Aff., Email Exchange Re: Carrier Packet and Rate Confirmation, Ex. F at 2 [#85-6]. When the truck was reportedly having refrigeration issues half an hour later, the purported dispatch manager contacted Seneca. No one informed Maxfield at the time. Id.; Grandillo 30(b)(6) Dep. at 52:10-20 [#83-1]; see 49 U.S.C. § 13102(23) (noting "refrigeration, icing" as services related to transportation by carriers). Indeed, it is undisputed that Maxfield had no knowledge of who would be transporting the load of lobster, and Seneca's representatives were the sole point of contact for the individuals who claimed to work for Rapid. Finally, Preferred Freezer contacted Seneca, rather than anyone at Maxfield, to confirm the release of the load. Maxfield Facts ¶ 18 [#83]; Grandillo 30(b)(6) Dep. at 81:7-82:21 [#83-1]. Grandillo then held Seneca out as the carrier to Preferred Freezer by acknowledging the driver and releasing the load. See 49 U.S.C. § 13102(23) (stating "interchange of passengers and property" as a transportation service performed by carriers).

8

Seneca handled the route, the packing, the coordination of travel and release of the lobster to another party without any involvement from Maxfield, rather than acting as the "go-between" to connect Maxfield and Rapid to complete the shipment. See Essex Ins. Co., 885 F.3d 1292, 1302; 49 U.S.C. § 13102(23) (stating "packing" as a transportation service by carriers). In this way, Seneca took on the role of the carrier in this specific transaction, by accepting responsibility for the lobster. See Essex Ins. Co., 885 F.3d 1292, 1302; Tryg Ins., 767 F. App'x 284, 288 ("In sum, if a party has accepted responsibility for transporting a shipment, it is a carrier."). Therefore, summary judgment is warranted for Maxfield, as no jury could reasonably find Seneca did not act as a carrier during this specific transaction. Accordingly, Seneca's Motion for Summary Judgment [#79] is DENIED as to Count 1 of the Amended Complaint [#18] and Maxfield's Cross-Motion for Summary Judgment [#82] is ALLOWED as to liability for the claim under the Carmack Amendment, Count 1 of the Amended Complaint [#18]. There are insufficient facts in the record from which the court can determine the amount Seneca owes under the Carmack Amendment, however, so Maxfield's Cross-Motion for Summary Judgment [#82] is DENIED as to damages.

The Carmack Amendment preempts all other claims against motor carriers. Adams Express Co. v. Croninger, 226 U.S. 491, 499 (1913); Rini, 104 F.3d 502, 504. Therefore, as Seneca is a carrier for the transaction at issue, Maxfield's claims for negligence and breach of contract are preempted. Accordingly, Seneca's Motion for Summary Judgment [#79] is ALLOWED as to the common law claims, Counts 2 and 3 of the Amended Complaint [#18], and Maxfield's Cross-Motion for Summary Judgment [#82] is DENIED as to those claims.

V. Seneca's Claims

A. *Factual Background*

It is undisputed that Maxfield has not paid Seneca invoices from a December 5, 2016, shipment, prior to the theft, and a December 22, 2016, delivery, after the theft. Seneca Facts ¶ 15 [#81]; Maxfield Facts ¶ 15 [#83]; Seneca Facts, Invoices ## 1141, 1062, Ex. G [#81-7]. After the lost load, Maxfield and Seneca emailed regarding Maxfield's obligation to pay for prior and future invoices, despite the loss. Seneca Facts ¶ 13 [#81]; Maxfield Facts ¶ 13 [#83]; Seneca Facts, Email Exchange Re: Money on the Books, Ex. H at 1 [#81-8]. In an email to Grandillo on December 20, 2016, Zhang wrote, "[t]his claim . . . will not affect the payment status of the other loads." Zhang Aff., Email Exchange Re: Richs Pick, Ex. A at 13 [#84-1].

B. *Analysis*

a. *Breach of Contract*

Seneca alleges that Maxfield breached the Contract by not paying the December 5, 2016, and December 22, 2016, invoices. Maxfield does not dispute that it did not pay the invoices, but argues that it only agreed to pay those invoices under duress. Maxfield Mot. for Summ. J. at 14 [#82].

To succeed on its economic duress defense, Maxfield must prove the following: "(1) that one side involuntarily accepted the terms of another; (2) that circumstances permitted no other alternative; and (3) that said circumstances were the result of coercive acts of the opposite party." Int'l Underwater Contractors, Inc. v. New England Tel. & Tel. Co., 393 N.E.2d 968, 970 (Mass. App. Ct. 1979). A claim of economic duress must be supported "by evidence that the duress resulted from defendant's wrongful and oppressive conduct and not by plaintiff's necessities." Id. Maxfield has made no showing that, even if Seneca is strictly liable for the loss of the lobster, that Seneca acted with "wrongful and oppressive conduct." Therefore, Maxfield has not presented sufficient evidence to permit a finding of economic duress and has conceded that it did

10

not pay the invoices in question. Accordingly, Seneca's Motion for Summary Judgment [#79] is ALLOWED as to Count 1 of the Answer and Counterclaim [#57] and Maxfield's Cross-Motion for Summary Judgment [#82] is DENIED as to Count 1 of the Answer and Counterclaim [#57].

      *b. Breach of the Covenant of Good Faith and Fair Dealing, Fraud, & M.G.L. c. 93A*

Seneca also seeks additional damages, alleging breach of the covenant of good faith and fair dealing, fraud, and unfair and deceptive business practices under M.G.L. c. 93A. Each of these claims places the burden upon Seneca to prove that Maxfield acted intentionally, knowing it would not pay the invoices but representing it would pay in order to obtain Seneca's services. See NASCO, Inc. v. Public Storage, Inc., 29 F.3d 28, 34 (1st Cir. 1994) (breach of contract violates c. 93A where it is knowing, intended to secure "unbargained-for benefits to the detriment of [the other party]," and "has an extortionate quality"); Balles v. Babcock Power Inc., 70 N.E.3d 905, 913 (Mass. 2017) (claim for fraud requires proof that a party made a false representation of a matter of material fact with knowledge of its falsity for the purpose of inducing action); Weiler v. PortfolioScope, Inc., 12 N.E.3d 354, 362 (Mass. 2014) (implied breach of covenant of good faith and fair dealing requires plaintiff to prove lack of good faith). Seneca has introduced no evidence relevant to determining Maxfield's intentions when representing it would pay for other shipments. Nothing in the record would permit a jury to find for Seneca on any of these claims. Accordingly, Seneca's Motion for Summary Judgment [#79] is DENIED as to Counts 2, 3, and 5 of the Answer and Counterclaim [#57] and Maxfield's Cross-Motion for Summary Judgment [#82] is ALLOWED as to those counts.[3]

---

[3] Seneca also brought a claim of negligent misrepresentation as Count 4 of the Answer and Counterclaim [#57] but did not address this claim in its briefing. To succeed on this claim, Seneca would need to show that Maxfield in the course of its business, supplied false information for the guidance of another upon which Seneca justifiably relied to its financial detriment, and that Maxfield failed to exercise reasonable care or competence in obtaining or

C. *Damages*

The unpaid invoices are for $3,935.00 and $4,410.00. Seneca Facts, Invoices ## 1141, 1062, Ex. G [#81-7]. Therefore, summary judgment is entered for Seneca in the amount of $8,345.00.

VI. Conclusion

For the foregoing reasons, Seneca's Motion for Summary Judgment [#79] is ALLOWED as to the common law claims, Counts 2 and 3 of the Amended Complaint [#18], and the breach of contract claim, Count 1 of the Answer and Counterclaim [#57]; the motion is DENIED as to all other counts. Maxfield's Cross-Motion for Summary Judgment [#82] is ALLOWED as to liability and DENIED as to damages for the claim under the Carmack Amendment, Count 1 of the Amended Complaint [#18]; ALLOWED as to the claims for breach of the implied covenant of good faith and fair dealing, fraud, and M.G.L. c. 93A, Counts 2 through 5 of the Answer and Counterclaim [#57]; and DENIED as to the breach of contract claim, Count 1 of the Answer and Counterclaim [#57]. Summary judgment is entered for Seneca in the amount of $8,345.00.

IT IS SO ORDERED.

August 14, 2019 /s/ Indira Talwani
United States District Judge

---

communicating the information. Cole v. New England Mut. Life Ins. Co., 729 N.E.2d 319, 323 (Mass. App. Ct. 2000). Seneca has failed to put forward facts that would allow a reasonable jury to find that Maxfield failed to exercise reasonable care or competence in obtaining or communicating the information. Therefore, Maxfield's Cross-Motion for Summary Judgment [#82] is ALLOWED as to Count 4 of the Answer and Counterclaim [#57].