UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| RICHWELL GROUP, INC. d/b/a | * | |
| MAXFIELD SEAFOOD, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. 1:17-cv-11442-IT |
| | * | |
| SENECA LOGISTICS GROUP, LLC, | * | |
| | * | |
| Defendant. | * | |

MEMORANDUM & ORDER

November 19, 2019

TALWANI, D.J.

Plaintiff Richwell Group, Inc. d/b/a Maxfield Seafood ("Richwell") brought this action against Defendant Seneca Logistics Group, LLC ("Seneca"), alleging that Seneca failed to deliver a truckload of lobster that Richwell contracted to have shipped, resulting in the shipment's total loss. Seneca counterclaimed for Richwell's failure to pay for other lobster shipments. The court granted in part and denied in part the parties' cross-motions for summary judgment and Richwell now seeks an assessment of damages on the one unresolved claim and entry of judgment, including prejudgment interest assessed under state law, and costs. Motion for Assessment of Damages and Entry of Judgment [#99]. For the following reasons, Richwell's Motion is ALLOWED, except that prejudgment interest is calculated pursuant to federal law.

I. Analysis

   A. Calculation of Damages

On summary judgment, the court found that Seneca had acted as a carrier and granted Richwell judgment as to liability on its Carmack Amendment claim (Count I of the Amended

Complaint). Memorandum & Order 9 [#97]. The court concluded, however, that the amount of damages owed by Seneca had not been addressed by the parties and remained in dispute. Id. Richwell's motion now seeks damages in the amount of $279,572.50.

Under the Carmack Amendment, a carrier is subject to liability "for the actual loss or injury to the property caused by [the carrier]." 49 U.S.C. § 14706(a)(1). The "ordinary measure of damages" under the Carmack Amendment is "the difference between the market value of the property in the condition in which it should have arrived at the place of destination and its market value in the condition in which, by reason of the fault of the carrier, it did arrive." Gulf, Colo., & Santa Fe Ry. Co. v. Tex. Packing Co., 244 U.S. 31, 37 (1917). The First Circuit has summarized this calculation as "the reduction in market value at destination or by replacement or repair costs occasioned by the harm." Camar Corp. v. Preston Trucking Co. Inc., 221 F.3d 271, 277 (1st Cir. 2000). See also Am. Nat. Fire Ins. Co. ex rel. Tabacalera Contreras Cigar Co. v. Yellow Freight Sys., Inc., 325 F.3d 924, 931 (7th Cir. 2003) (stating that the purpose of damages is to put "the shipper back in the position it would have been in had the carrier properly performed."). The Carmack Amendment incorporates "common law principles of damages," Camar, 221 F.3d at 277, and the carrier shoulders the burden to show that the market value rule will not result in a just measure of actual damages. Project Hope v. M/V IBN SINA, 250 F.3d 67, 77 (2d Cir. 2001) (finding that when there is no open market and therefore no market value for the damaged goods, a different measurement like replacement cost may be used). When goods are lost completely or destroyed, the court must determine the market value of the goods without any offset for their value on arrival. See Polaroid Corp. v. Schuster's Exp., Inc., 484 F.2d 349, 352 (1st Cir. 1973). The court looks for non-speculative evidence establishing the market

value of the goods to set the award of damages for the total loss of goods. Camar, 221 F.3d at 277-78.

Here, Richwell asserts a market value for the lost goods of $279,572.50, based on invoices provided to Richwell by its original supplier of the goods, Aquashell Holdings Inc. Seneca. Ex. 1 – Purchase Order Invoices (Zhang Aff.) [#100-1]. In basing the market value on the price invoiced by the supplier, rather than the price Richwell sought to charge the purchaser, Richwell has waived any claim for lost profits. Pl.'s Mot. for Assessment of Damages and Entry of J. 1-2 ("Pl.'s Mot.") [#99]. Seneca does not argue that the invoices are fraudulent or inflated, and offers no argument as to why the invoices are not an accurate calculation of the goods' market value.

Seneca instead contends the court should calculate the damages based on the harm Richwell suffered, which Seneca contends is the amount Richwell actually paid to the supplier.[1] Def,'s Opp'n to Mot. for Assessment of Damages and Entry of Judgment ("Def.'s Opp'n") 2-4 [#103]; Def.'s Suppl. Mem. 2 [#109]. However, Seneca misreads the statute and precedential cases. "Actual loss" in the Carmack Amendment means the value of the goods lost. 49 U.S.C. § 14706(a)(1) ("The liability imposed…is for actual loss or injury *to the property* caused by [the carrier]") (emphasis added). The default equation for determining damages is the difference between the market value of the property and the value of goods after damage or loss by the carrier. Gulf, 244 U.S. at 37. Thus, damages are not limited to the amount Richwell actually paid for the goods. If, for example, an insurer paid the bill or a shipper failed to pay its supplier, those

---

[1] In its memorandum, Seneca contends that Richwell has not complied with the "best evidence rule." Although the best evidence rule usually refers to Fed. R. Evid. 1002, which requires the production of "an original writing, recording, or photograph" in order to prove its content, the court understands Seneca to be contending that Richwell has not submitted evidence to prove that it in fact paid the supplier for the subsequently lost goods.

3

facts would have no bearing on the value of the goods. The amount actually paid is relevant only insofar as it helps the court determine the goods' market value at the time the carrier lost or damaged the goods. Camar, 221 F.3d at 277. Under the default rule, Richwell's actual loss, per the Carmack Amendment, is the value of the lobsters lost, not the amount of money Richwell may have paid to its supplier at the end of the day. See Eastman Kodak Co. v. Westway Motor Freight, Inc., 949 F.2d 317, 320 (10th Cir. 1991) (finding invoices to be sufficient evidence of market value to measure shipper's damages).

Seneca argues that Camar and Ameriswiss Tech., LLC v. Midway Line of Ill., Inc., 890 F.Supp.2d 189 (D. N.H. 2012), requires Richwell to submit the amount it actually paid its supplier. Def.'s Supp. Mem. 2-3 [#109]. The Camar court followed the Supreme Court's dictate that damages are calculated based on the reduction in market value by the harm caused by the carrier. Camar, 221 F.3d at 277. The trial court searched for and found as "non-speculative evidence of the market value of the lost equipment" the price the shipper recently paid for the goods. Camar Corp v. Preston Trucking Co., Inc., 18 F.Supp.2d 112, 116 (D. Mass. 1998), aff'd by 221 F.3d 271. Upon review, the First Circuit agreed that the price paid was an appropriate non-speculative piece of evidence as to the goods' market value because that price showed what the goods were most recently worth on the open market. Camar, 221 F.3d at 278. The court also affirmed the trial court's finding that the price of expected future sales or the original price of the damaged goods when bought new by a previous owner, both offered by the shipper as the true market value, were speculative and therefore insufficient evidence to base its damages award on. Id. at 277.

In Ameriswiss Tech., LLC, the district court followed the same rubric used in Camar and by the Supreme Court. The court distinguished between evidence of what the shipper paid for the

4

goods with the shipper's expert testimony purporting to offer the true worth of the goods. 890 F.Supp.2d at 192-93. The court found the latter to be speculative. Id. In both cases, however, the salient point was not that the shipper had handed over money for the goods to its supplier or that such amounts are the only measure of market value, but rather that the evidence measured by the price the shipper paid served as a non-speculative variable needed to calculate the market value of the damaged goods pursuant to the Supreme Court's default rule.

Similarly here, the invoices showing the price that Richwell was billed for the lobsters by its supplier is non-speculative evidence of the goods' value on the open market at the time they were lost by Seneca. Seneca does not dispute that the invoices are accurate. Nor has Seneca provided any persuasive rationale for why the invoices do not reflect the lobsters' value on the open market. See, e.g., Project Hope, 250 F.3d at 77. Therefore, the court finds the prices listed on the invoices sufficient, non-speculative evidence as to the market value of the goods at the time the goods were lost by the carrier. Since the entire value of the goods was destroyed, the damages on the Carmack Amendment claim is the total market value of the goods, as reflected in the invoices. Gulf, 244 U.S. at 37.

Accordingly, the Court ALLOWS Richwell's Motion as to damages and awards $279,572.50 on the Carmack Amendment claim.

B. Entry of Judgment

Richwell's action included, in addition to the Carmack Amendment claim, two state law causes of action. Amended Complaint [#18]. The court granted Seneca's motion for summary judgment on the state law claims. Mem. & Order 9 [#97]. On Seneca's Counterclaim [#57], the court found on summary judgment that Seneca had established that Richwell failed to pay two invoices for other lobster shipments. Mem. & Order 10-12 [#97]. The court entered summary

5

judgment on Seneca's breach of contract claim, and awarded Seneca damages of $8,345. The court granted Richwell summary judgment as to Seneca's remaining counterclaims. Id. 11 [#97]. Accordingly, judgment may now be entered on all claims. Fed. R. Civ. P. 54(b).[2]

### C. Richwell's Request for Prejudgment Interest

Richwell also seeks an award of prejudgment interest, at the Massachusetts rate of 12 percent per annum set by M. G. L. c. 231, §§6B-6C. Seneca argues against an award of any prejudgment interest and contends that if prejudgment interest is awarded, it should be at the rate set for post-judgment interest by 28 U.S.C. § 1961.

The basic purpose of prejudgment interest is to ensure that a party is fully compensated for its loss. City of Milwaukee v. Cement Div. Nat'l Gypsum Co., 515 U.S. 189, 195, n. 7 (1959) (collecting cases). Prejudgment interest "compensates for the time value of money." Motion Picture Ass'n of Am., Inc. v. Oman, 969 F.2d 1154, 1157 (D.C. Cir. 1992). See also Am. Nat. Fire, 325 F.3d at 935 ("The basic purpose of prejudgment interest is to put a party in the position it would have been in had it been paid immediately."). Courts have broad discretion as to whether to award prejudgment interest. Radford Tr. v. First Unum Life Ins. Co. of Am., 491 F.3d 21, 23 (1st Cir. 2007). Courts often consider the length of time between the harm and judgment, Lavery v. Restoration Hardware Long Term Disability Benefits Plan, 937 F.3d 71, 85 (1st Cir. 2019), the purpose of the relevant federal statute, Gross v. Sun Life Assurance Co. of Can., 880 F.3d 1, 19-20 (1st Cir. 2018), and the potential for unjust enrichment of the party subject to liability. TMTV Corp. v. Mass Prods., Inc., 645 F.3d 464, 474 (1st Cir. 2011).

---

[2] Richwell seeks $417 in costs. Pl.'s Mot. 3 [#99]; Bill of Costs [#101]. Seneca has not objected and the costs appear reasonable. Accordingly, Richwell's costs will be included in the judgment.

On this basis, the court finds that an award of prejudgment interest to Richwell is appropriate. Significant time has passed between the harm Richwell suffered and judgment in this case. An award of prejudgment interest will help make Richwell whole and better approximates the harm that Richwell suffered by not being paid immediately. Am. Nat. Fire, 325 F.3d at 935. Additionally, awarding of prejudgment interest in this case serves the purpose of the statute. The Carmack Amendment was intended to help shippers know in advance what their potential recovery would be if their goods became damaged or destroyed by a carrier. See Rodgers v. United States, 332 U.S 371, 373 (1947) (looking to the "congressional purpose" of a federal statute to determine whether prejudgment interest was merited); Adams Exp. Co. v. Croninger, 226 U.S. 491, 505 (1913) (discussing purpose of the Carmack Amendment). Thus, by adding interest, the court is serving the Amendment's purpose by diminishing the effect the duration of litigation has on the shipper's expected recovery. Here, Richwell, has incurred a loss of the time value of money on top of the loss of goods, and awarding prejudgment interest helps make Richwell whole. Motion Picture Ass'n, 969 F.2d at 1157. Interest will be calculated from the filing of the claim through the entry of judgment. Cardiaq Valve Techs., Inc. v. Neovasc Inc., 2017 WL 215961 at *3 (D. Mass. Jan. 18, 2017).

The next question the court must decide is whether to apply the state or federal prejudgment interest rate. When federal question jurisdiction applies, as here, a district court may choose to resort to state law on prejudgment interest if the relevant federal law is "deficient" or silent. Furtado v. Bishop, 604 F.2d 80, 97 (1st Cir. 1979) (citing Robertson v. Wegmann, 436 U.S. 584, 588 (1978)). If the relevant federal law is silent, the court has a great deal of latitude when choosing which rate to apply, based on equitable considerations. Cottrill v. Sparrow, Johnson & Ursillo, Inc., 100 F.3d 220, 225 (1st Cir. 1996) ("[t]he law confers discretion on the

7

trial judge,") abrogated on other grounds by Hardt v. Reliance Standard Life Ins. Co., 560 U.S. 242 (2010); Colon Velez v. P.R. Marine Mgmt., Inc., 957 F.2d 933, 941 (1st Cir. 1992) (under the Employee Retirement Income Security Act (ERISA), which is silent as to prejudgment interest, "the granting of pre-judgment [sic] interest falls under the equitable powers of the district court"). Finally, though 28 U.S.C. § 1961 explicitly applies to the calculation of post-judgment interest, courts frequently use it as a benchmark interest rate to determine prejudgment interest. Gross, 880 F.3d at 19-20.

The Carmack Amendment is silent on the question of which rate to use when calculating prejudgment interest. 49 U.S.C. § 14706. However, the court again takes guidance from the legislative purpose of the Carmack Amendment, which was "to achieve national uniformity in the liability assigned to carriers." Rini v. United Van Lines, 104 F.3d 502, 504 (1st Cir. 1997). To achieve national uniformity, the Carmack Amendment has preempted state law claims against carriers, Id., and the Supreme Court long ago rejected a claim for a state penalty for failure to pay a claim promptly. Charleston & W. Carolina Ry. Co. v. Varnville Furniture Co., 237 U.S. 597, 603-04 (1915). Applying one single rate of interest – as dictated by 28 U.S.C. § 1961 – rather than a different rate of interest in each of the 50 states better serves Congressional intent in passing the Amendment.

For these reasons, the court finds that the federal rate, based on the weekly average 1-year constant maturity Treasury yield as provided for in 28 U.S.C. § 1961, shall be applied. The time frame for calculating the prejudgment interest is from the filing of the case on August 3, 2017, through today's entry of judgment.

Conclusion

For the previously stated reasons, Richwell's Motion [#99] is ALLOWED and the court will enter Judgment, including an award to Richwell of $279,572.50 in damages, prejudgment interest calculated at a rate of 1.55%, and $417 in costs.

IT IS SO ORDERED.

November 19, 2019                                    /s/ Indira Talwani
                                                                        United States District Judge